INSTITUTIONAL FOOD HOUSE, INC. v. J. HOWARD COBLE, SECRETARY OF REVENUE OF THE STATE OF NORTH CAROLINA

No. 71

(Filed 29 January 1976)

1. Taxation § 23— construction of tax statute, exemption

Where the meaning of a tax statute is doubtful, it is construed against the State and in favor of the taxpayer unless a contrary legislative intent appears; conversely, a provision of a tax statute providing an exemption from the tax, otherwise imposed, is strictly construed against the taxpayer and in favor of the State.

2. Taxation § 23— construction of tax exemption

If the intent of the Legislature is discernible from a tax statute, it will prevail regardless of the rule of strict construction against exemptions.

3. Taxation § 31— soft drink tax — "base products"

Under the Soft Drink Tax Act, "base products" are taxable as such only when used to complete a soft drink which, if sold bottled, would be subject to the tax.

4. **Taxation § 31— soft drink tax — applicability**

By enactment of the Soft Drink Tax Act, the Legislature intended to tax only those "soft drinks," including fruit juice drinks, to which coloring, artificial flavoring or preservative has been added, or which contain less than 35 percent of natural fruit juice, and unless a soft drink is subject to taxation if sold bottled, its ingredients cannot be taxed.

5. **Taxation § 31— soft drink tax — frozen concentrated orange juice**

Since natural orange juice is exempted from taxation under the Soft Drink Tax Act when sold bottled, frozen concentrated orange juice, as an ingredient of natural orange juice, cannot be taxed under the Act.

PLAINTIFF appealed from judgment of *Lee, J.,* 1 April 1975 Civil Session, WAKE Superior Court. After the record on appeal was duly docketed in the Court of Appeals, we allowed certiorari and the case was certified to this Court for initial appellate review prior to determination by the Court of Appeals.

The case was tried before Judge Lee without a jury.

Plaintiff is engaged in the sale of food and food products, including canned frozen concentrated orange juice, to restaurants, hospitals, schools, and other commercial customers. These customers are not soft drink bottlers but are engaged in the preparation of food and drink which is served to their customers and patrons. Plaintiff failed to pay taxes found by defendant to be due on the frozen concentrated orange juice. Following an audit, defendant made an assessment against plaintiff for $1,119.98 which plaintiff paid under protest and brought this action to recover same.

Evidence offered by plaintiff—defendant offered none— consists of the stipulations of the parties, including the stipulated testimony of the witness W. W. Brown which is set out in the record as Exhibit A and narrated in the paragraphs which follow.

W. W. Brown is Vice President of Lykes Pasco Packing Company in Dade City, Florida, operator of the largest citrus processing plant in the world and producer of frozen concentrated orange juice which is sold in North Carolina. Some of its frozen concentrated orange juice is packed in institutional size containers and distributed in North Carolina by the plaintiff in this case. Mr. Brown is a graduate of the University of Tennessee with a major in bacteriology and a minor in chem-

istry. He has had five years experience in research and development in the area of food technology with the Minute Maid Company and nineteen years experience in quality control and research and development in the citrus industry. He is a member of the Institute of Food Technologists and of the Association of Food and Drug Officials. Over the years he has participated in numerous professional seminars, conferences, and short courses related to food technology, the processing of juices, or fabrication of drinks.

Mr. Brown testified that fruit juice is the natural juice extracted from fruit; and concentrated fruit juice, such as frozen concentrated orange juice, is the natural juice extracted from fruit from which a substantial portion of the water has been removed. Fruit juice is a natural substance to which nothing has been added, and concentrated fruit juice is the result of extraction of water from that natural substance. Concentrated fruit juice is not fabricated or manufactured from a number of ingredients. In the case of frozen concentrated orange juice, approximately three-fourths of the water is removed to reduce the cost and increase the convenience of storage and shipment. The proper amount of water restored prior to consumption does not result in a product more diluted than the orange juice. Rather, it brings the concentrated juice back to the full strength of natural fruit juice. From the standpoint of restoration, flavoring and chemistry, the juice which results when the water is restored to frozen concentrated orange juice is substantially identical to that of the original juice.

Fruit juice drinks, and concentrates for fruit juice drinks, are fabricated drinks which are only partially composed of a fruit juice concentrate. They are not natural fruit juices. They are not a single natural substance. They are drinks fabricated or manufactured from a number of ingredients. Unlike natural fruit juice, their fruit juice content is highly diluted so that when consumed the strength of its fruit juice ingredient is only a fraction of that of natural fruit juice. Ingredients of concentrates for fruit juice drinks include substantial quantities of water, sugar, syrup, natural flavoring, acidifiers, buffers, stabilizers and emulsifiers and often include coloring, artificial flavoring, and preservatives. When restaurants or other institutional establishments desire to serve a fruit juice drink they do not attempt to prepare it by mixing frozen concentrated orange juice and the many other necessary ingredients. Rather,

Food House, Inc. v. Coble, Sec. of Revenue

they turn to a manufacturer from whom they purchase a prepared concentrate for fruit juice drink containing all of the ingredients in the correct proportions and chemical balance.

After considering the testimony of W. W. Brown and the pretrial stipulations, Judge Lee made findings of fact which track verbatim the stipulations of the parties. Those findings, and conclusions of law based thereon, appear in the following judgment rendered by Judge Lee:

"1. The plaintiff is a corporation organized and existing under and by virtue of the laws of the State of North Carolina with its principal office and place of business in Hickory, North Carolina, and is and was at all times material to this action engaged in the business of buying and selling, among other things, frozen concentrated orange juice.

2. The defendant is the Secretary of Revenue of the State of North Carolina, and as such he is and he and his predecessor in office were at all times material to this action charged with the duty of enforcing the provisions of the North Carolina Soft Drink Tax Act set forth in Article 2B, Subchapter I, Chapter 105 of the General Statutes of North Carolina.

3. On 26 February 1972, plaintiff paid to the defendant's predecessor in office the sum of One Thousand One Hundred Nineteen Dollars and Ninety-Eight Cents ($1,119.98) representing taxes which the defendant's predecessor had assessed against the plaintiff upon the sale by the plaintiff (without having paid any soft drink tax thereon) of quantities of frozen concentrated orange juice to the following purchasers:

Holiday Inn Restaurant, Lenoir, N. C.;

Holiday Inn Restaurant, Morganton, N. C.;

Ann's Restaurant, North Wilkesboro, N. C.;

Holiday Inn Restaurant, Hickory, N. C.;

Oasis Diner, Hickory, N. C.;

Oak Hill School Lunch, Morganton, N. C.;

Maggie Valley Country Club, Maggie Valley, N. C.;

Bethlehem School Lunch, Bethlehem, N. C;

Lattimore School Lunch, Lattimore, N. C.;

Proctor School Lunch, Lattimore, N. C.;

Harris School Lunch, Cliffside, N. C.;

Mom & Pop Ham House, Claremont, N. C.;

Mom & Pop Ham House, Drexel, N. C.;

Dales Restaurant, Statesville, N. C.;

Western Cat. City Kindergarten, Newton, N. C.;

Eastern Cat. City Kindergarten, Catawba, N. C.;

Ridgeview School Lunch, Hickory, N. C.;

Quality Restaurant, Morganton, N. C.;

Patterson School for Boys, Patterson, N. C.;

Catawba Valley Rest Home, Conover, N. C.;

Dula Hospital, Lenoir, N. C.;

Catawba Memorial Hospital, Hickory, N. C.;

Hickory Memorial Hospital, Hickory, N. C.;

Richard Baker Hospital, Hickory, N. C.;

Cleveland Memorial Hospital, Shelby, N. C.;

Margaret Pardee Hospital, Hendersonville, N. C.;

Watauga Hospital, Boone, N. C.;

Alexander Hospital, Taylorsville, N. C.

4. Within thirty days after payment of said assessment of taxes, the plaintiff demanded in writing that defendant's predecessor refund said amount of taxes paid by plaintiff, which demand was denied and no amount of said taxes has been refunded to the plaintiff.

5. The products involved in this action, the sale of which is subject to the aforesaid tax assessment, consisted of canned frozen concentrated orange juice. Such product is derived from pure, natural orange juice by the extraction of approximately three-fourths of the water therefrom,

and is a 'natural fruit juice concentrate' as that term is used in G.S. 105-113.44(9).

6. The restoration of approximately three parts of water to one part of the natural fruit juice concentrate involved in this action results in a 'liquid which results from the reconstitution of natural fruit juice concentrate by the restoration of water to dehydrated natural fruit juice' and such resultant liquid is the same as, and is the equivalent of 'natural fruit juice' as those terms are used in G.S. 105-113.44(9).

7. No tax is imposed under the North Carolina Soft Drink Tax Act on the sale of frozen concentrated orange juice identical to that involved herein when such products are sold or held ·for sale in closed retail-sized containers by retailers, such as grocery stores and supermarkets, when such products are to be 'used domestically,' which quoted phrase appears in G.S. 105-113.44(18) and which the defendant has interpreted to mean when such products are to be consumed by persons in homes and residences (as distinguished from what the defendant considers to be 'commercial use'). While frozen concentrated orange juice 'used domestically' is physically identical to frozen concentrated orange juice 'used commercially,' the defendant contends that the application of the tax depends upon the use to which the product is put (commercial, as opposed to domestic), on account of the provisions of G.S. 105-113.44(18).

8. Natural fruit juices, including liquids resulting from the reconstitution of orange juice concentrate, by the restoration of water thereto, are sold in North Carolina for use and consumption in households and residences, and for use and consumption in places where food or drink may be obtained for a consideration, such as public school cafeterias and lunch rooms, hospitals, nursing homes and other institutions and restaurants serving the public. The sale of such natural fruit juices is exempt from the North Carolina Soft Drink Tax, whether or not such natural fruit juices are sold for 'commercial' or 'domestic' use and whether or not such natural fruit juices have been reconstituted by the restoration of water to a natural fruit juice concentrate either inside or outside of North Carolina.

Food House, Inc. v. Coble, Sec. of Revenue

9. The defendant would not grant an exemption from the Soft Drink Tax for the orange juice concentrate involved in this action, if an application for such exemption were filed with the defendant pursuant to G.S. 105-113.47, which provides for an exemption from the tax for 'all bottled soft drinks containing thirty-five percent (35%) or more of natural fruit or vegetable juice . . .' The defendant would contend that orange juice concentrate is neither 'natural fruit juice' nor a 'bottled soft drink containing 35% or more of natural fruit juice.'

10. The orange juice concentrate involved in this action is not a 'bottled soft drink' as that term is used in G.S. 105-113.44(3) and G.S. 105-113.45(b) or a 'soft drink powder' as that term is used in G.S. 105-113.44(18) or G.S. 105-113.45(d) or a simple syrup as that term is used in G.S. 105-113.44(16) or G.S. 105-113.45(c), and such concentrate herein involved is taxable under the Soft Drink Tax Act only if the Court concludes that such concentrate is taxable as a 'base product' as that term is used in G.S. 105-113.44(1) or is taxable as a 'soft drink syrup' as that term is used in G.S. 105-113.44(18).

### Conclusions of Law

1. Fruit juice, both natural and reconstituted, is a soft drink, exempt from tax pursuant to G.S. 105-113.47.

2. Fruit juice concentrates, including the canned frozen concentrated orange juice which is the subject of this action, are not soft drinks.

3. Fruit juice concentrates, including the canned frozen concentrated orange juice which is the subject of this action, are soft drink base products as defined in G.S. 105-113.44(1).

4. Soft drink base products, other than dry base products taxed as soft drink powders under G.S. 105-113.45(d), are taxed as syrups, pursuant to G.S. 105-113.44(1) and G.S. 105-113.45(c) when used commercially.

5. The canned frozen concentrated orange juice which is the subject of this action was used commercially, not domestically, and was subject to tax pursuant to G.S. 105-113.44(1) and G.S. 105-113.45(c).

6. The General Assembly has, in the Soft Drink Tax Act, classified soft drink products into three categories: bottled soft drinks; soft drink powders; and soft drink syrups and base products taxed as syrups.

7. The General Assembly has further classified such syrups and base products into two classes: products which are used commercially and products which are not used commercially; and it has taxed only those which are used commercially.

8. The foregoing subclassification, based upon use, is based upon a reasonable distinction between the subclasses and is not arbitrary, capricious or unconstitutional.

9. Fruit juice concentrates, including the canned frozen concentrated orange juice which is the subject of this action and which are soft drink base products taxed as syrups, are classified and taxed like all other syrups and base products taxed as syrups.

10. As such, they are taxed uniformly within their class, and there is no unconstitutional discrimination against them.

11. The assessment made by the defendant was lawful and proper in all respects.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED, that the plaintiff's action be dismissed, that the relief it seeks be denied, and that the costs of this action be taxed against the plaintiff.

This the 15 day of May, 1975."

Plaintiff objected and excepted to the failure of the court to find and conclude, additionally, that the concentrated orange juice involved in this action is not a "soft drink syrup," and is not a product which is "practically and commercially usable for the making of a soft drink," as those words are used in G.S. 105-113.44 (8). Plaintiff further took exception to each conclusion of law contained in the judgment "for that such conclusion is not purported [supported] by or justified by the findings of fact and a proper interpretation of the Soft Drink Tax Act." Plaintiff excepted to the signing of the judgment and gave notice of appeal, assigning errors discussed in the opinion.

*Smith, Anderson, Blount and Mitchell by John H. Anderson and Michael E. Weddington, attorneys for plaintiff appellant.*

*Rufus L. Edmisten, Attorney General, and Myron C. Banks, Special Deputy Attorney General, for defendant appellee.*

HUSKINS, Justice.

This action presents two questions for decision. The first question is whether the sales of frozen concentrated orange juice herein involved are properly taxable under the provisions of the North Carolina Soft Drink Tax Act, G.S. 105-113.41 et seq. (1969). If this be so, the second question is whether said Act, on its face, or as interpreted and applied by the Secretary of Revenue to these sales, violates the equal protection of the laws guaranteed by Article I, Section 19 of the North Carolina Constitution and the Fourteenth Amendment to the United States Constitution.

The North Carolina Soft Drink Tax Act provides, in pertinent part, as follows:

"§ 105-113.41. *Short title.*—This Article shall be known and cited as the 'Soft Drink Tax Act.'

§ 105-113.42 *Purpose of Article.*—It is the purpose of this Article to provide a source of additional revenue which shall be applied to the general fund of the State.

§ 105-113.43. *Liability for tax.*—Every person doing domestic or intrastate business within this State and engaging in the business of selling, manufacturing, purchasing, consigning, using, shipping or distributing, for the purpose of sale within this State, soft drinks of every kind whatsoever, including but not limited to the following articles or things, viz: soda water, ginger ale, Coca-Cola, lime-cola, Pepsi-Cola, near beer, fruit juices, vegetable juices, and all fountain drinks and other beverages and things commonly designated as 'soft drinks' shall, for the privilege of carrying on such business, be subject to the payment of a license tax which shall be measured by and graduated in accordance with the sales of such person within the State, except as may be otherwise provided in this Article.

Every person within the State of North Carolina, importing, receiving or acquiring from without the State, or from any other source, beverages commonly designated as

soft drinks as contemplated by this Article, for use or consumption within North Carolina, shall be subject to payment of the soft drink tax at the rates provided for the sale, offer for sale, or distribution of such soft drinks.

§ 105-113.44. *Definitions.*—As used in this Article, unless the context otherwise requires:

(1) 'Base products' means hot chocolate flavored drink mix, flavored milk shake bases, concentrate products to which milk or other liquid is added to complete a soft drink, and all like items or products as herein defined which will be taxed as syrups.

(2) 'Bottled' means enclosed in any closed or sealed glass, metal, paper or other type of bottle, can, carton or container, regardless of the size of such container.

(3) 'Bottled soft drink' means any complete, finished, ready-to-use, nonalcoholic drink, whether carbonated or not, such as soda water, ginger ale, Nu-Grape, Coca-Cola, lime-cola, Pepsi-Cola, budwine, near beer, fruit juice, vegetable juice, milk drinks when any flavoring or syrup is added, cider, bottled carbonated water and all bottled preparations commonly referred to as soft drinks of whatever kind or description.

\* \* \* \*

(9) 'Natural fruit juice' means the natural liquid which results from the pressing of sound ripe fruit, and the liquid which results from the reconstitution of natural fruit juice concentrate by the restoration of water to dehydrated natural fruit juice.

\* \* \* \*

(18) 'Soft drink syrups and powders' includes the compound mixture or the basic ingredients, whether dry or liquid, practically and commercially usable in making, mixing or compounding soft drinks by the mixing thereof with carbonated or plain water, ice, fruit juice, milk or any other product suitable to make soft drinks, among such syrups being such products as Coca-Cola syrup,

Chero-Cola syrup. Pepsi-Cola syrup, Dr. Pepper syrup, root beer syrup, Nu-Grape syrup, lemon syrup, vanilla syrup, chocolate syrup, cherry smash syrup, rock candy syrup, simple syrup, chocolate drink powder, malt drink powder, or any other prepared syrups or powders sold or used for the purpose of mixing soft drinks commercially at soda fountains, restaurants or similar places as well as those powder bases prepared for the purpose of domestically mixing soft drinks such as kool-aid, oh boy drink, tip-top, miracle aid and all other similar products. Concentrated natural frozen or unfrozen fruit juices or vegetable juices when used domestically are specifically excluded from this definition.

\*   \*   \*   \*

§ 105-113.45. *Taxation rate.*— (a) A soft drink excise tax is hereby levied and imposed on and after midnight, September 30, 1969, upon the sale, use, handling and distribution of all soft drinks, soft drink syrups and powders, base products and other items referred to in this section.

(b) The rate of tax on each bottled soft drink shall be one cent (1¢).

(c) The rate of tax on each gallon of soft drink syrup or simple syrup shall be one dollar ($1.00), and on a fraction of a gallon the rate shall be an amount which represents one dollar ($1.00) multiplied by the same fraction of a gallon. The rate of tax on each ounce or fraction of an ounce of soft drink syrup or simple syrup shall be four fifths of a cent (4/5¢), and no exemption or refund shall be allowed on such syrup even though it may subsequently be diverted to some purpose other than the making of soft drinks.

(d) The rate of tax on dry soft drink powders and base products which are used to make soft drinks without being converted into syrup shall be one cent (1¢) per ounce or fraction thereof of the dry powder or base product weight. However, the tax on dry soft drink powder or base product which is to be converted into syrup shall be the same as that which would be due upon the syrup produced,

if the syrup were being taxed according to the rates set out in subsection (c) above.

(e) The excise tax herein levied on syrups, powders and base products shall not apply to syrups, powders and base products used by persons in the manufacture of bottled soft drinks which are otherwise subject to tax under this Article. The Commissioner [now Secretary] may by administrative rules or regulation, provide for the storage of such syrups, powders and base products when they are not for use in the manufacture of bottled soft drinks.

\*    \*    \*    \*

§ 105-113.47. *Natural fruit or vegetable juice or natural liquid milk drinks exempted from tax.*— (a) All bottled soft drinks containing thirty-five percent (35%) or more of natural fruit or vegetable juice and all bottled natural liquid milk drinks containing thirty-five percent (35%) or more of natural liquid milk, are exempt from the excise tax imposed by this. Article, except that this exemption shall not apply to any fruit or vegetable juice drink to which has been added any coloring, artificial flavoring or preservative. Sugar, salt or vitamins shall not be construed to be an artificial flavor or preservative."

The threshold question is whether the sales of frozen concentrated orange juice involved in this case are taxable events within the meaning of the Soft Drink Tax Act. The parties have stipulated, and the court has found, that the concentrate involved in these sales is taxable only if it is either a "base product" as that term is defined in G.S. 105-113.44(1), or a "soft drink syrup" as that term is defined in G.S. 105-113.44(18). The trial court heard the case upon stipulations, including the stipulated testimony of plaintiff's witness W. W. Brown, made findings of fact, and concluded as a matter of law that canned frozen concentrated orange juice is a soft drink "base product" as defined in G.S. 105-113.44(1) and therefore taxable. Plaintiff contests the propriety of this conclusion, and we turn to the rules of statutory construction for enlightenment on the question involved.

In construing and interpreting the language of a statute we are guided by the primary rule of construction that the intent of the Legislature controls. *Watson Industries, Inc. v. Shaw, Comr. of Revenue,* 235 N.C. 203, 69 S.E. 2d 505 (1952). If the

language of a statute is clear and unambiguous, judicial construction is unnecessary and its plain and definite meaning controls. *Davis v. North Carolina Granite Corp.*, 259 N.C. 672, 131 S.E. 2d 335 (1963). But if the language is ambiguous and the meaning in doubt, judicial construction is required to ascertain the legislative intent. *Underwood v. Howland, Comr. of Motor Vehicles*, 274 N.C. 473, 164 S.E. 2d 2 (1968) ; *Young v. Whitehall Co., Inc.*, 229 N.C. 360, 49 S.E. 2d 797 (1948) ; *State v. Humphries*, 210 N.C. 406, 186 S.E. 473 (1936).

**[1, 2]** Where the meaning of a tax statute is doubtful, it is construed against the State and in favor of the taxpayer unless a contrary legislative intent appears. *Colonial Pipeline Co. v. Clayton, Comr. of Revenue*, 275 N.C. 215, 166 S.E. 2d 671 (1969) ; *Sabine v. Gill, Comr. of Revenue*, 229 N.C. 599, 51 S.E. 2d 1 (1948) ; *Henderson v. Gill, Comr. of Revenue*, 229 N.C. 313, 49 S.E. 2d 754 (1948) ; *State v. Campbell*, 223 N.C. 828, 28 S.E. 2d 499 (1944). "In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen." *Gould v. Gould*, 245 U.S. 151, 62 L.Ed. 211, 38 S.Ct. 53 (1917). Conversely, a provision in a tax statute providing an exemption from the tax, otherwise imposed, is strictly construed against the taxpayer and in favor of the State. *In re Clayton-Marcus Co., Inc.*, 286 N.C. 215, 210 S.E. 2d 199 (1974) ; *Distributors v. Shaw, Comr. of Revenue*, 247 N.C. 157, 100 S.E. 2d 334 (1957) ; *Henderson v. Gill, Comr. of Revenue, supra*. Nevertheless, if the intent of the Legislature is discernible from the statute it will prevail regardless of the rule of strict construction against exemptions. *Acheson v. Johnson, State Tax Assessor*, 147 Me. 275, 86 A. 2d 628 (1952).

In the absence of a clear indication to the contrary, words in a statute must be given their ordinary meaning unless they have acquired a technical significance. *Duke Power Co. v. Clayton, Comr. of Revenue*, 274 N.C. 505, 164 S.E. 2d 289 (1968) ; *Bleacheries, Inc. v. Johnson, Comr. of Revenue*, 266 N.C. 692, 147 S.E. 2d 177 (1966). If the statute itself contains a definition of a word used therein, that definition controls and courts must construe the statute as if the definition had been used in lieu of the word. If the words of the definition itself

are ambiguous, they must be construed pursuant to the general rules of statutory construction. *In re Clayton-Marcus Co., Inc., supra.*

This brings us to the task of applying these rules of statutory construction to the statutes involved in the controversy before us.

The Soft Drink Tax Act establishes a bifurcated scheme of taxation whereby (1) "bottled soft drinks" not otherwise exempt are subjected to a "crown tax" levied upon the sale of each individual bottle of "soft drink," G.S. 105-113.45 (b) ; and (2) "base products," "soft drink syrups," "soft drink powders" and "simple syrups," ingredients used to make "open-cup soft drinks," are subjected to a tax levied upon the sale of individual units of each. G.S. 105-113.45 (c) and (d). Since the *ingredients* used to make "open-cup soft drinks" are taxed, there is no provision in the Act for taxing the "open-cup" (as opposed to "bottled") sales of any soft drink. However, the tax is not levied upon syrups, powders and base products which are used to prepare a bottled soft drink which is itself subject to tax under the Soft Drink Tax Act. G.S. 105-113.45 (e). Similarly exempt from taxation are those "bottled soft drinks" which contain 35 percent or more of natural fruit juice, provided no coloring, artificial flavoring or preservative has been added. G.S. 105-113.47 (a).

Did the Legislature intend, by this statutory scheme, to treat frozen concentrated orange juice as either a "base product" or a "soft drink syrup" and impose the soft drink excise tax upon it? For the reasons which follow, the answer is no.

Neither the sale of natural orange juice nor the sale of bottled fruit juice drinks containing 35 percent or more of natural orange juice is a taxable event under the Act. G.S. 105-113.44 (9) ; G.S. 105-113.47 (a). Nor does the tax apply to "base products used by persons in the manufacture of bottled soft drinks which are otherwise subject to tax under this Article." G.S. 105-113.45 (e). In light of these statutory provisions, defendant stipulated, and the trial court found as a fact, that sales of natural fruit juice, including liquids resulting from the reconstitution of concentrated orange juice by the restoration of water, are exempt from the tax "whether or not such natural fruit juices are sold for 'commercial' or 'domestic' use." This leads us to conclude that when the Soft Drink Tax Act is read aright and considered as a composite whole, the Legislature intended

to exclude from taxation the sale of all natural fruit juices, however packaged. Taxation of frozen concentrated orange juice as a "base product" is contrary to such intent and largely nullifies the exemption contained in G.S. 105-113.47(a). We think the Legislature did not intend such an incongruous result. Where possible, "the language of a statute will be interpreted so as to avoid an absurd consequence." *Hobbs v. Moore County,* 267 N.C. 665, 149 S.E. 2d 1 (1966); *Young v. Whitehall Co., Inc., supra.*

The definition of "base product" contained in G.S. 105-113.44(1) "may not be lifted out of its context so as to universalize its meaning. A word or phrase or clause or sentence may vary greatly in color and meaning according to the circumstances of its use. . . . It is axiomatic, therefore, that a provision in a statute must be construed as a part of the composite whole and must be accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit. Its meaning must sound a harmonious—not a discordant—note in the general tenor of the law." *Watson Industries, Inc. v. Shaw, Comr. of Revenue, supra.* This is particularly true here in light of the settled rule that tax statutes shall be strictly construed against the State, while the converse rule as to tax exemptions must yield in the face of a legislative intent to the contrary. *See Acheson v. Johnson, State Tax Assessor, supra; In re Clayton-Marcus Co., Inc., supra.* Thus the definition of "base product" contained in G.S. 105-113.44(1) must be construed in the broad context of the Act as a whole, giving effect, as we must, to the necessary implications arising from the fact that natural orange juice, including reconstituted frozen concentrated orange juice, is expressly excluded from taxation under the Act. G.S. 105-113.44(9); G.S. 105-113.45(e); G.S. 105-113.47(a). See the stipulation of the parties embodied verbatim as Finding of Fact No. 8.

[3] So construed, we hold that the term "base product" refers to a product which is used to complete a drink not specifically exempted from the Act. Stated differently, "base products" are taxable as such only when used to complete a soft drink which, if sold bottled, would be subject to the tax. This interpretation of G.S. 105-113.44(1) is consistent and harmonious with G.S. 105-113.45(e), which exempts base products, syrups, and other enumerated soft drink ingredients when used in the manufacture of bottled soft drinks which are otherwise subject to tax

under the Act. It also comports with the statutory scheme for administering the bifurcated system of taxation which characterizes the Act. The effect of this scheme is to tax the sale or distribution of the soft drink itself when practical but tax the sale or distribution of the *ingredients* thereof when this would be impractical. The taxation of "soft drinks" sold "bottled" can most easily and precisely be accomplished by imposing a "crown tax" on each individual bottle and affixing the appropriate tax indicia. Therefore, base products and other defined ingredients used in the preparation of "bottled" soft drinks are not taxed. On the other hand, it would be impractical to levy and collect a tax on each open-cup soft drink sale. Accordingly, base products and other specified ingredients used to complete soft drinks intended for open-cup sales are taxed in lieu of the open-cup drink itself. Since these *same soft drink ingredients* are excluded from taxation when used in the manufacture of "bottled soft drinks" subject to the crown tax, G.S. 105-113.45 (e), the clear implication is that sales of these ingredients are taxable only when intended for use in a soft drink which, if sold "bottled," would be subject to the tax.

[4, 5] In summary, then, we hold that by enactment of the Soft Drink Tax Act the Legislature intended to tax only those "soft drinks," including fruit juice drinks, to which coloring, artificial flavoring or preservative has been added, or which contain less than 35 percent of natural fruit juice. The Act imposes a crown tax on the sale of soft drinks when sold in bottles and upon the ingredients thereof when used to make the identical soft drink for sale in open cups. Unless a soft drink is subject to taxation if sold bottled, its ingredients cannot be taxed. Since natural orange juice is exempt from taxation when sold bottled, it follows that frozen concentrated orange juice, as an ingredient of natural orange juice, cannot be taxed under the Act.

Frozen concentrated orange juice is not a fruit juice drink; rather, it is merely one dehydrated form of natural orange juice and, however packaged and however sold, is exempt from taxation unless color, artificial flavoring or preservative has been added to it.

Accordingly, the tax paid by plaintiff under protest upon the sales of frozen concentrated orange juice herein involved was improperly assessed and as to said sum plaintiff is entitled to judgment.

Food House, Inc. v. Coble, Sec. of Revenue

In view of our resolution of the first question posed, we neither reach nor decide the constitutional question presented by this appeal.

The judgment below is reversed and the case remanded to Wake Superior Court for entry of judgment in accordance with this opinion.

Reversed and remanded.